UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHANNON BASKERVILLE and TABITHA BROCK-BETHUNE,<br><br>    Plaintiffs,<br><br>    v.<br><br>ELMHULT LTD. P'SHIP DBA IKEA, a limited partnership; RICHARD BECK, JANE DOE BECK and the marital community composed thereof; and BOBBYE FOWLER, JOHN DOE FOWLER and the marital community composed thereof,<br><br>    Defendants. | NO. CV4-0737C<br><br>ORDER |

This matter comes before the Court on Defendants' Motion For a Protective Order Regarding Eatonville Police Department Records (Dkt. No. 82). The Court has carefully reviewed the materials submitted by the parties, and for the following reasons, hereby GRANTS Defendants' motion.

I.   BACKGROUND

Plaintiffs brought this action against Defendants for race discrimination, assault, battery, false imprisonment, false arrest, and negligence allegedly arising out of an incident at an IKEA store. While working at IKEA as a Loss Prevention Officer, Defendant Beck ("Beck") also volunteered as a reserve officer for the Eatonville Police Department ("EPD"). In 2000, EPD denied his application to become a fully commissioned police officer and asked him to leave the reserve police force. In 2001, Beck was promoted from loss prevention coworker to the manager of the loss prevention department of IKEA. At

ORDER – 1

his deposition, Beck speculated that discrepancies between polygraph test results and oral answers may have been the reason EPD asked him to leave.

As part of discovery, Plaintiffs scheduled a records deposition at EPD to obtain all of Beck's records, including performance evaluations, complaints, disciplinary records, psychological evaluations, and polygraph results.[1] In response, Defendants object to the production of these records and seek a protective order.

II.     ANALYSIS

According to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  To temper the liberal scope of discovery, Fed. R. Civ. P. 26(c) permits the Court to issue an order to protect a person from "annoyance, embarrassment, oppression, or undue burden or expense," if there is good cause for issuance of the order.  The party seeking a protective discovery order must show good cause for the order by demonstrating the harm or prejudice that will result from the discovery. *Rivera v. Nibco*, 364 F.3d 1057, 1063 (9th Cir. 2004).  That burden is a heavy one. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). However, the Court need not reach the issue of potential harm or prejudice, because Plaintiffs' request exceeds the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1).

Plaintiffs assert that the EPD records could reveal information supporting Plaintiffs' claims. Specifically, Plaintiffs seek Beck's EPD records in order to determine why he was asked to leave EPD and to determine if he had a history of using excessive force or discriminating against minorities. Plaintiffs also assert that such records would help establish whether IKEA negligently retained Beck as the manager of the loss prevention department.

---

[1] Under 29 U.S.C. § 2008, EPD cannot disclose polygraph test results to the Plaintiffs.

ORDER – 2

Even if the EPD records reveal complaints or disciplinary actions regarding conduct such as the use of excessive force or discrimination, Beck's past conduct outside of IKEA is irrelevant as to whether an incident constituting assault, battery, discrimination, false imprisonment, false arrest, or negligence occurred at IKEA on February 9, 2002. Assault requires a showing that the defendant intended to cause offensive contact with the plaintiff, or put the plaintiff in fear of such contact. Battery requires an extra element of unwanted touching. False arrest or false imprisonment involves the "unlawful violation of a person's right of personal liberty or the restraint of that person without legal authority." *Bender v. City of Seattle*, 664 P.2d 492, 499 (Wash. 1983). Beck's EPD records would not contain admissible evidence or lead to admissible evidence regarding these claims.

To prove Plaintiffs' claim that Defendants violated the Consumer Protection Act, Wash. Rev. Code ch. 19.86, Plaintiffs must provide evidence of the following elements: 1) an unfair or deceptive act or practice, 2) occurring in trade or commerce, 3) that impacts the public interest, and 4) causes injury to the plaintiff. *Jeckle v. Crotty*, 85 P.3d 931 (Wash. Ct. App. 2004). Plaintiffs also claim that Defendants violated 42 U.S.C. § 1981 by denying Plaintiffs the same right to make and enforce contracts as is enjoyed by white persons in the United States. Beck's EPD records are not germane to either of these claims. Beck's conduct at EPD sheds no light on whether IKEA engaged in unfair or deceptive practices or discriminated against Plaintiffs by refusing to accept their personal checks.

Plaintiffs further allege racial discrimination in violation of Washington Law Against Discrimination ("WLAD"), Wash. Rev. Code §§ 49.60 *et seq*. To prove a racial discrimination in public accommodation claim under the WLAD, Plaintiffs must show that: 1) Plaintiffs are members of a protected class; 2) Defendant's establishment is a place of public accommodation; 3) Defendants discriminated against Plaintiffs by failing to treat them in a manner comparable to treatment provided to persons outside that class; and 4) protected status was a substantial factor causing discrimination. *Demelash v. Ross Stores, Inc.*, 20 P.3d 447, 456 (Wash. Ct. App. 2001), *review denied* 35 P.3d 380 (Wash. 2001). An action under this state claim requires a showing that the unequal treatment was

ORDER – 3

motivated by race. *McKinney v. City of Tukwila*, 13 P.3d 631, 642 (Wash. Ct. App. 2001). Plaintiffs argue that Beck's EPD records may reveal past instances of racial discrimination and that such evidence would be relevant to their claim. However, evidence of Beck's character is not admissible "for the purpose of proving action in conformity therewith on a particular occasion," Fed. R. Evid. 404, and discovery of such information is not reasonably calculated to lead to admissible evidence. Even if Plaintiffs did find that Beck had a history of discrimination, they would have to prove that his actions *on the day of the incident* were motivated by race, and not by other loss-prevention-related triggers.

Plaintiffs also fail to convince the Court that the records are relevant to a determination of the negligence alleged in their complaint. Plaintiffs' complaint sets forth a general cause of action for negligence, alleging that Defendants had a duty and breached that duty. Plaintiffs do not allege that Beck was unqualified for the position or that IKEA negligently hired, retained, or supervised him. In *Beltran v. DSHS*, 989 P.2d 604, 610 (1999), the court held that it was reasonable to deny discovery of employment applications because the applications would have been relevant and discoverable only if the plaintiff's complaint had alleged that the employees were unqualified for their positions.

In the case at bar, Plaintiffs assert that IKEA's failure to conduct a background check is included within its general claim of negligence. However, under the more specific pleading standard established in *Beltran*, the Court finds that Plaintiffs have not alleged a sufficiently specific claim of negligence to warrant compelling the disclosure of Beck's EPD records.

For all the foregoing reasons, the Court finds that discovery of Beck's EPD records is not reasonably calculated to lead to the discovery of admissible evidence.

Accordingly, Defendants' motion for a protective order is GRANTED.

SO ORDERED this 10th day of August, 2005.

*[signature]*
UNITED STATES DISTRICT JUDGE

ORDER – 4